Bobby WOODWARD *v.* STATE of Arkansas

CA CR 85-48                                        696 S.W.2d 759

Court of Appeals of Arkansas
Division I
Opinion delivered September 25, 1985
[Rehearing denied October 23, 1985.]

*Hilburn, Bethune, Calhoon, Forster, Harper & Pruniski, Ltd.*, by: *John F. Forster, Jr.* and *Dorcy Kyle Corbin*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Judge. Bobby Woodward appeals from his conviction of conspiracy to commit burglary and theft of property for which he was sentenced to three years in the Department of Correction and fined $10,000. He advances five points for reversal in which we find no merit.

The charge against him grew out of a "sting" operation conducted by the Pulaski County Sheriff's Office. Issa Zacharia operated a business in Little Rock under the name of "JR's Gold and Silver Exchange." He was approached by Jerry Norman and asked to purchase some admittedly stolen goods. Zacharia did not purchase the items but reported the incident to appellant, a captain in the Sheriff's Department. Norman was known to the Sheriff's Department as a burglar who for some time had successfully eluded arrest. The sheriff authorized appellant to set up the operation in Zacharia's place of business, and installed video cameras to record purchases of stolen goods from Norman and any associates. The purchased goods were to be delivered to the sheriff's office and returned to the victims after Norman's arrest.

The State charged that Woodward, Zacharia, Conrad Cardova and others then conspired to prolong the operation and encouraged Norman to commit a number of burglaries and sell the stolen merchandise to them. Norman was shown to be so addicted to drugs that the monetary requirements of his habit were enormous. He burglarized homes at random to obtain the required funds for drugs and would apparently sell the stolen property for any price that was offered. There was testimony that over twenty such burglaries were committed during the period of the conspiracy and that the conspirators had indicated to Norman the type of goods they desired stolen. Norman stated that almost all of the goods stolen by him were purchased by the conspirators. During most of the purchases the cameras were not activated, no inventory of purchases was kept and the stolen goods not delivered to the sheriff's office. Most of the stolen merchandise sold to the sting operation by Norman was resold by Zacharia, Cardova and appellant and the receipts retained by them.

The appellant contends that the operation was a legitimate one set up for the purpose of documenting a case against Norman. He stated that it was continued beyond the initial sales by

Norman because other persons had been with Norman when he sold stolen goods at the Gold and Silver Exchange. He contends that they did not arrest Norman while they were investigating the participation of the other persons in the crimes. He contends that Zacharia, Cardova and Norman had entered into the conspiracy without his knowledge or participation. He maintains that when their crimes were discovered, the conspirators falsely involved him in order to obtain leniency for themselves. The jury returned a verdict of guilty. This appeal followed.

Zacharia testified for the State. In his testimony about the activity of the conspirators he discussed a conversation with the appellant regarding appellant's plan to run for sheriff of Faulkner County. He stated that appellant agreed to continue the operation in Pulaski County as long as it could last as it was very profitable and if elected sheriff he would set up a similar operation in Faulkner County in which Zacharia would participate as a deputy sheriff. The appellant contends that it was error for the trial court not to grant his motion for a mistrial as this evidence was irrelevant and highly prejudicial. He argues it dealt with a separate conspiracy and was not an act in furtherance of the conspiracy.

Zacharia also testified that several days after Norman's arrest there was a meeting at which Cordova, Al Simpson and the appellant were present. At this meeting there was a discussion about the disposition of some of the stolen property which was stored at Zacharia's home. He stated that as a result of that discussion the items were taken out of the house and put in plastic bags to be disposed of the next morning by Simpson. Simpson testified that he attended that meeting and that Cordova, appellant and Zacharia were present. He stated that he was told to remove the items and get rid of them. He did so by throwing them into a creek. "Zach and *all* of them that were there told me to dispose of them and get rid of them." The appellant contends that this testimony was not admissible under Unif. R. Evid. 801(d)(2)(v). He argues that the statements made regarding the continuance of the conspiracy and the establishment of a similar one in Faulkner County were "future plans" and were not acts in furtherance of the common object; that the statements made about the disposition of the stolen property occurred after the conspiracy had terminated, and were not in the furtherance of the

conspiracy, but a concerted effort to conceal the crime. We do not agree.

■■ Unif. R. Evid. 801(d) in pertinent part is as follows:

(d) Statements which are not hearsay.—A statement is not hearsay if:

. . . .

(2) Admission by a party opponent. The statement is offered against a party and (i) is his own statement in either his individual or representative capacity, (ii) a statement of which he has manifested his adoption or belief in its truth, . . . (v) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

These subsections have different applications. Rule 801(d)(2)(i) and (ii) deal with oral statements and nonverbal actions of the accused himself. Subsection (v) deals with otherwise hearsay statements of a co-conspirator declarant against the accused. Only the latter is required to be in furtherance of the conspiracy. Statements and nonverbal actions of a party which are offered against the individual declarant are not hearsay but non-hearsay admissions under Rule 801(d)(2)(i) or (ii).

This distinction is most clearly demonstrated in *United States* v. *Traylor*, 656 F.2d 1326 (1981). There the court held admissible those statements made by an accused to the witness as nonhearsay admissions even though not made in furtherance of the conspiracy. It rejected as inadmissible similar statements to the same witness by the appellant's co-conspirators outside his presence.

■ Zacharia testified that the appellant had told him that he wished to extend the existing operation as long as it was profitable and to establish a "similar" one in Faulkner County after he was elected sheriff. There were admissions against penal interest by the appellant as to his participation in the acts complained of in the charge and intent to continue them. They were admissible under Rule 801(d)(2)(i).

Simpson testified that "Zach and *all* of them that were there told me to dispose of them and get rid of them." If the statement was made by the appellant it would be an admission against

interest. Rule 801(d)(2)(i). If it was made by other persons in his presence it would, under the circumstances outlined, constitute a tacit or adopted one. Rule 801(d)(2)(ii).

In support of his objection to the statements of Zacharia and Simpson regarding disposition of the property made after the conspiracy ended, appellant relies on *Smith* v. *State*, 6 Ark. App. 228, 640 S.W.2d 805 (1982) and *Krulewitch* v. *United States*, 336 U.S. 440 (1949) which hold that statements by co-conspirators made after the conspiracy has ended are not admissible because the hearsay exception applies only to acts in furtherance of the conspiracy and "does not extend to concerted efforts to conceal the crime." This reliance is misplaced. In both cases the excluded statements were made by co-conspirator declarants and were not, as here, attributed to the accused. We find no error in the trial court's ruling.

During the cross-examination of Art Copeland he was asked if he had ever stated that Zacharia asked him to "back him up" on everything he might say. Copeland denied making such a statement. During examination, appellant was permitted without objection to state that Copeland had made such a statement to Woodward in the course of the investigation. He further stated that he had a tape recording of the conversation in which the statement was allegedly made by Copeland. Appellant contends that it was error for the trial court to refuse to admit the tape recording into evidence for the purpose of impeaching the witness. Even if the tape recording was admissible for some purpose, appellant has not pointed out how he was prejudiced by the ruling.

Woodward had already testified that the statement had been made to him by Copeland. Although from the context of the questions it is apparent that it was expected to contain the statement attributed to Copeland, we do not know what else might have been said in the conversation. The conversation took place during the investigation of the crimes. The record contains no offer to edit out those parts of the conversation which did not relate to the statement in issue. We find no prejudicial error in refusing to admit the recording of the entire conversation.

Appellant next contends that the trial court erred in refusing two requested instructions approved in *Devitt & Blackmar*,

*Federal Jury Practice and Instructions.* The first would have told the jury that the testimony of an informer who provides evidence for immunity from punishment must be examined with greater care than that of the other witnesses. The second would have told the jury that where the informer is also a narcotics addict, his testimony should be even more carefully examined because he might have an abnormal fear of imprisonment where his supply of drugs would not be available.

■■ The trial court properly rejected the instructions for at least two reasons. First they contain comments on the evidence, a practice permitted in Federal courts but not in ours. Secondly, the offered instructions are not included in our Model Instructions on Criminal Law. The Court gave our approved instruction on credibility of witnesses. The purpose of the Model Instructions is to avoid confusing the jury. Even if an offered instruction contains a correct statement of the law it is not error for the trial court to refuse to give it where its subject is covered in an approved one. *Conley v. State*, 270 Ark. 886, 607 S.W.2d 328 (1980). Here the trial court gave our model instruction which told the jury that it might consider the evidence in the light of their own experience and take into consideration a witness's means of acquiring knowledge, interest in the outcome of the litigation and *any other fact or circumstance* tending to shed light on the truth or falsity of the witness's testimony. Furthermore, in closing argument defense counsel was permitted to argue that the testimony of an informer seeking leniency lacked credibility and to point out the effect of drug abuse on the mind and memory of the witness and other reasons why an addict's testimony might not be reliable.

Appellant finally contends that the evidence was not sufficient to sustain the conviction. He does not argue that the testimony of his co-conspirators did not show a conspiracy and overt acts in furtherance of it. He argues only that there was insufficient corroborating evidence tending to connect him with those crimes independent of the testimony of the co-conspirators.

■ Ark. Stat. Ann. § 43-2116 (Repl. 1977) provides that a felony conviction cannot be had upon the testimony of accomplices unless corroborated by other evidence tending to connect the defendant with the commission of the offense. The cor-

roborating evidence need not be sufficient to sustain the conviction but need only tend in some degree to connect the defendant with the crime independently of the testimony of the accomplice. *Costen* v. *State*, 10 Ark. App. 242, 663 S.W.2d 187 (1984).

Zacharia testified that he and appellant conspired to encourage Norman to commit numerous burglaries by offering to purchase all of the goods he might steal. It was stipulated that during the period in question a number of homes were burglarized and listed items stolen. Norman admitted on the witness stand and in extra-judicial statements to the police that he had committed the burglaries and sold all or almost all of the stolen goods to JR's Gold and Silver Exchange. Some was sold to Zacharia, some to appellant, and some to both of them.

According to Zacharia, he and appellant conspired to dispose of much of the stolen goods for their own profit by failing to activate the cameras or inventory the purchased property. Pursuant to that agreement much of the silver and gold was melted into ingots and sold in the precious metal market. Other merchandise was sold elsewhere and the proceeds divided. Suffice it to say the evidence of the accomplices was more than ample to sustain the conviction if the requirements of independent corroboration was met. The court instructed the jury that Norman and Zacharia were accomplices as a matter of law, and that their testimony must be corroborated.

Diane Locklear testified that she had frequented JR's Gold and Silver Exchange during the period of the conspiracy and became friends with appellant, Cordova and Zacharia. She stated that she knew that they were conducting a sting operation for the sheriff. She stated that on one occasion the appellant admitted to her that he had taken some stolen merchandise "off the top on the supposed sting operation that had been set up in that location."

Art Copeland testified that he also frequented the place during that period and had seen appellant, Zacharia and Cordova purchase merchandise from Norman. He stated that after he had learned that the officers were conducting a sting operation there, he expressed an interest in buying some of the goods brought in by Norman. He stated that appellant answered that "for the right price" he could purchase it.

There was evidence from other witnesses that during this period they observed the appellant and Zacharia melting gold in an outbuilding on appellant's property. There was evidence from the sheriff's office that video tapes were not made on most of the buys and there were discrepancies between the amount of goods reported stolen from the homes burglarized by Norman and that turned over by appellant to the sheriff.

■■ Appellant argues that Locklear was unreliable because of an alleged involvement in prostitution. Her credibility was a question for the jury to resolve. He also argues that she was an accomplice because she had originally been indicted as a co-conspirator. That charge against her had been dismissed and we find nothing in the record tending to connect her with either the conspiracy or the crimes committed in furtherance of it. Appellant also argues that Simpson was an accomplice whose testimony should be corroborated. Although Simpson did help dispose of some of the stolen good after the conspiracy ended, he denied any involvement in the conspiracy and acts in furtherance of it. Ordinarily the question of whether a witness is an accomplice is a mixed question of fact and law and must be submitted to the jury where the evidence is in dispute. *Robinson* v. *State*, 11 Ark. App. 18, 665 S.W.2d 89 (1984). The trial court properly instructed the jury on this issue. From our review of the entire record we cannot conclude that the jury's verdict was not supported by substantial corroborative evidence tending to connect appellant to the crimes testified to by his co-conspirators and accomplices.

Affirmed.

MAYFIELD and GLAZE, JJ., agree.