Kay DOBIE *v.* Larry R. ROGERS and Elizabeth H. Snipan

99-531                                              5 S.W.3d 30

Supreme Court of Arkansas
Opinion delivered November 18, 1999

*Karen Pope Greenaway*, for appellant.

*David H. Williams*, for appellees.

LAVENSKI R. SMITH, Justice. Appellant, Kay Dobie ("Dobie"), appeals a judgment of the Faulkner County Circuit Court in which a jury awarded Appellees, Larry Rogers ("Rogers") and Elizabeth Snipan ("Snipan"), a total of $125,250.00 in damages. The damages represent the cost to repair the house Appellees bought from Dobie and her ex-husband, Ron Dobie. The jury found Dobie, her ex-husband, and Bob Kordsmeier ("Kordsmeier"), individually and as an agent for Conway Home Inspection Service, Inc., jointly and severally liable for the damages. Dobie raises four issues on appeal. First, she asserts that the trial court erred in failing to grant her motion for directed verdict. Second, she contends that the jury's verdict was not supported by substantial evidence. Third, she contends that the court erred in ruling that the defendants were jointly and severally liable. Finally, she contends that the court erred in instructing the jury on a theory of liability that had previously been eliminated in a partial grant of summary judgment. We affirm.

*Facts*

Dobie and her ex-husband commissioned the construction of the house in question in 1986. The couple, who were still married at the time, hired Don Mallory ("Mallory"), a general contractor, to build the house for them. During construction, the subcontractor who laid the foundation loaded fill dirt for the foundation from the pond located on the property. This accomplished two objectives in that it enlarged the pond, and it provided inexpensive dirt for the foundation. Construction on the house was completed in December, 1986, and the Dobies moved into the house at that time.

The Dobies lived in the house until 1991 when they listed it for sale. The appellees first saw the house in February, 1992, and ultimately made an offer on the house. Before the sale was final, the appellees hired Kordsmeier, a house inspector, at the suggestion of the realtor. Kordsmeier inspected the house and met with the appellees to review his findings with them. Overall, Kordsmeier found the house to be in good condition. He did note that he saw an oddity in the laundry room in that Dobies had attached a vacuum cleaner hose to the washing machine's water-outlet hose, and ran it to the outside yard through the dryer vent, instead of the through the in-house plumbing to the septic system. Kordsmeier noted this on his report and advised the appellees of this situation. Snipan later asked the real-estate agent about this situation. In response, the agent apparently told Snipan that by-passing the plumbing was not unusual. He said that people using septic tanks often did not run their wash water through the septic system in order to not overtax the system.

The sale of the house ultimately went through, and the appellees moved in. Upon moving in, the appellees ran their washing-machine outlet hose through the outlet drain to the septic system. Approximately one year later, the appellees began experiencing problems with the plumbing in the house. Snipan testified at trial that she first noticed water coming from under the house one day as she walked towards the back of the house. She testified that she crawled under the house and found that water was running from beneath it. She told her husband about her discovery, but he disregarded her observations.

Thereafter, in May of 1993, the appellees operated several appliances simultaneously including the dishwasher and clothes washer, which used the same in-house plumbing outlet pipes. Snipan testified that when she looked at the side of the house, she saw water running out of the bricks at approximately three or four places. Snipan testified that there was water all over the yard, so she called a repairman to come to the house. Once the repairman arrived, he ran a water hose down the washing-machine drain and turned it on. They then saw water running through the bricks.

Appellees called the builder and an inspector, who found that the foundation had collapsed under the laundry room crushing the outlet pipes and causing water to run under the house. Appellees

ultimately had several inspections done. The inspections revealed that the fill dirt used to create the base for the house's foundation had retracted because it was wet when it was originally laid down. As such, the concrete slab foundation no longer rested on solid ground. The crushed pipes allowed the outlet water to seep under the house and erode the soil foundation further exacerbating the problem. Appellees requested estimates on repair, and these estimates ranged from $132,000 to $190,000 for a full repair.

On August 30, 1994, Appellees filed their lawsuit against the Dobies, Kordsmeier, Century 21 and various real-estate agents. Appellees' claims against Dobie included negligence, breach of implied warranty of fitness for a particular purpose and habitability, misrepresentation and constructive fraud. The trial court dismissed Appellees' claims against the real-estate agents by an agreed order, and granted summary judgment in favor of Mallory, the builder of the home, based on the applicable statute of limitations. We upheld that summary judgment on appeal.[1]

The case proceeded to trial with the remaining defendants on July 30, 1998. Following jury selection, the trial court considered various motions filed by the parties, including a motion for summary judgment filed by Dobie on May 29, 1998. Dobie's attorney argued that the claims against Dobie should be dismissed. Regarding the negligence and breach-of-the-implied-warranties claims, Dobie's counsel argued that Dobie was not the builder, and had no control over the construction of the house. Furthermore, regarding the claims of constructive fraud and misrepresentation, Dobie's attorney argued that the appellees stated in their depositions that they never actually spoke with Dobie, nor did they rely on the seller's disclosure statement when buying the house. Dobie's attorney also argued that these claims were not properly supported by appropriate affidavits and documentation in the pleadings before the court. The trial court granted Dobie's motion for summary judgment on the issues of negligence and breach of the implied warranties, finding that Dobie was not the builder/vendor of the home. However, the court allowed the claims of constructive fraud and misrepresentation to go to trial.

---

[1] *Rogers v. Mallory*, 328 Ark. 116, 941 S.W.2d 421 (1997).

During trial, the appellees testified regarding their experience with the purchase of the house, as well as their discovery of the defect in the foundation. The appellees also presented evidence from several experts and inspectors regarding the process involved· with the breakdown of the house's foundation. First, they presented Carl Garner ("Garner"), a civil engineer with and vice-president of Grubbs, Garner and Hoskyn Engineers in Little Rock. That firm's main area of focus is primarily in soil and foundation engineering, construction material, concrete, asphalt, steel and soils. Garner was contacted to inspect the house because of the problems discovered with the foundation. Garner visually inspected the site, including the laundry room and kitchen where the main· area of settlement was centered. Garner and his firm then drilled a hole in the concrete floor in the laundry room to get a core sample of the foundation, and found that the slab settlement was a result of saturation of the fill soils and subsequent settlement due to the sewer break under that part of the house. Largely, Garner testified that while he could not state whether the defect in the concrete slab existed at the time the house was sold, he could say that the there was a problem with the fill soil under the slab, and that the wash-· ing-machine hose more than likely was positioned outside of the dryer vent to relieve the water that was going to the broken pipe.

Appellees next presented Tom Allen ("Allen"), a real-estate structural and mechanical inspector. Allen inspected the house in October of 1995, and noted that the waste system had failed beneath the kitchen and laundry. Allen testified that the initial inspection report issued by Kordsmeier indicated that these failures existed at the time of that inspection, but that the report failed to summarize or conclude what had happened. Allen noted that the washing-machine hose presented an "absolute oddity," and was a compensation for a problem that was ongoing and existing at the time of Kordsmeier's inspection. Allen concluded that it was his opinion that the defective conditions existed at the time the Dobies owned the house and when Kordsmeier made his inspection.

Appellees next questioned Frank Moore ("Moore"), vice-president and general manager of Hills of Arkansas, a general contracting firm specializing in concrete foundation repairs and waterproofing. Moore testified regarding the type of repairs required to fix the foundation problems, and noted that the two types of repairs suggested for this house cost between $132,000.00 and

$193,000.00. The appellees final witness, Reese Michael Pearce ("Pearce"), a real-estate appraiser, determined that the value of the home and property on November 11, 1997, without considering the structural damages, was $183,000.00. However, taking into account the structural problems, Pearce estimated the value of the property between $0 and $50,900.00, indicating a loss of $132,000.00 to $183,000.00.

At the close of the appellees' case, Dobie moved for a directed verdict, arguing that appellees did not present any proof that there was anything wrong with the house at the time of the sale or before the sale in 1991. Instead, she contended that the evidence presented indicated that the problems with the house occurred from 1993 and beyond. The court denied this motion. Dobie later renewed her motion for directed verdict at the close of the defendants' case, and again the court denied that motion.

In the defendants' case, the defense presented testimony from several witnesses including the Dobies, Kordsmeier, two structural repair engineers, and several other witnesses who had seen the house on several occasions. Defendants first presented John T. Wright ("Wright"), owner of a foundation repair company, who inspected the house at Kordsmeier's request. Wright testified that he determined that only the kitchen and laundry room needed structural repair, and noted that the laundry room had a failure in the slab causing the sinkage in that room. Wright's estimate to repair these two areas was approximately $9,224.00, plus another $1,500.00 for the plumbing repairs.

The defendants also called Marcia Lacy ("Lacy") and Victor Schingle ("Schingle"), real-estate agents with Century 21, the realtor that listed the house. Lacy testified that when she was in the house during the time that it was on the market, she saw no problems with the floors in the kitchen and laundry room. Schingle testified that he did not recall having a conversation with Snipan about the washing-machine hose or the condition of the floors.

Defendants presented several other inspectors and repairmen besides Wright, including James Lee ("Lee"), a technician with Midstate Termite & Pest Control, Paul Mudersback ("Mudersback"), a general repairman, John Camp ("Camp"), a general contractor, John Lawrence ("Lawrence"), a structural-damage civil

engineer, Don Louden ("Louden"), a home inspector, and Ed Hoezleman ("Hoezleman"), a remodeler. Lee testified that he did not observe any problems with the flooring during the times that he serviced the house. Mudersback, who performed general repairs on the house at the request of Lacy in preparation for the sale of the house, testified that he saw nothing out of the ordinary with the condition of the house nor any problems with the condition of the floors. Camp, who was called by the appellees to inspect the condition of the floors and foundation, determined that the problem with the house was with the plumbing under the kitchen and laundry room, and estimated the cost of those repairs at $10,000.00 to $11,000.00. Lawrence, a foundation specialist, noted that the slab foundation had moved significantly in the localized area of the laundry room and kitchen, but testified that such a condition could occur over a short period of time. Lawrence noted that the problem could have stemmed from inadequate fill compaction when the house was first built. Louden noted the problems with the flooring on his inspection, and provided general information regarding what an inspector, such as Kordsmeier, should review. Louden stated that with the condition of the house at the time that he saw it, he would have advised the buyers to get a more extensive inspection, but that there was no way to tell what the condition of the house was when Kordsmeier inspected it in 1992. Finally, Hoezleman noted the problems with the flooring, and estimated the cost of repair at $26,000.00.

At the close of the case, the trial court instructed the jury on the individual causes of action, and presented the jury with a general verdict with interrogatories. The jury returned a verdict for the appellees. This judgment was finally entered on October 15, 1998, and Dobie timely appealed on November 13, 1998.

## Sufficiency of the Evidence

Dobie asserts in her first point on appeal that there was not sufficient evidence to support the jury's verdict finding constructive fraud by Dobie because there was no evidence of misrepresentation by Dobie and no evidence of detrimental reliance by the appellees on any representation made by Dobie. Dobie notes that the appellees purchased the home from her in "as is" condition, and that the appellees never had any conversations with Dobie about the condi-

tion of the house. Furthermore, Dobie argues that despite the fact that she signed a seller's disclosure statement in which she asserted that the house was in good condition, the appellees' testimony at trial revealed that they did not rely on this statement, nor did they recall even seeing this statement, when deciding to buy the home and property.

The appellees argue in response that Dobie's grounds for contesting the denial of her directed-verdict motion on appeal are different from the ground argued at trial; therefore, this court can not consider the new grounds for the first time on appeal. In response to the ground raised at trial, the appellees note that substantial evidence existed to support the jury's verdict. Appellees cite the testimony from Garner and Allen who both testified that the defective condition existed at the time the Dobies owned the house and at the time Kordsmeier made his inspection. Regarding the issues on appeal, appellees argue that Dobie's signature on the seller's disclosure form as well as the testimony that the problems existed at the time Dobie signed that form are sufficient to provide substantial evidence of constructive fraud.

While Dobie argues in her brief that there were no genuine issues of material fact with regard to appellees' claims against her, this case does not come to us in the posture of an appeal from a denial of a motion for summary judgment. The trial court denied Dobie's motion for summary judgment on the issues of constructive fraud and misrepresentation, and this court has held that the denial of that motion is neither appealable or reviewable. *Amalgamated Clothing & Textile Workers Int'l Union v. Earle Indus., Inc.*, 318 Ark. 524, 886 S.W.2d 594 (1994). However, Dobie also made a motion for a directed verdict at the close of the plaintiff's case, and at the close of trial, and a denial of that motion can be reviewed on appeal. Ark. R. Civ. P. 50(a). The standard of review of the denial of a directed-verdict motion is whether the jury's verdict is supported by substantial evidence; substantial evidence is defined as evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture; when determining the sufficiency of the evidence, the supreme court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf the judgment was

entered. *D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 986 S.W.2d 836 (1999).

In her motion for directed verdict, Dobie argued that appellees were unable to show any proof that there was anything wrong with the home while Dobie lived there or when she signed the seller's disclosure statement. Dobie argued that any damage was established from 1993 forward, which does not prove the state of the home in December, 1991, while Dobie lived there. However, on appeal, Dobie argues that appellees did not prove any reliance upon any alleged representation made by Dobie, specifically noting that Snipan testified that she did not rely on the seller's disclosure statement at trial. We will not consider arguments raised for the first time on appeal. *Quinney v. Pittman*, 320 Ark. 177, 895 S.W.2d 538 (1995). In *Quinney*, the appellant stated grounds for his directed-verdict motion, arguing that the evidence was not sufficient to support the causes of action, and the trial court denied that motion. On appeal, the appellant attempted to argue additional grounds, but because those arguments were not brought to the attention of the trial court, we refused to consider the arguments on appeal. Such is the case here, in that Dobie specifically argued below that there was *no* evidence before 1993 that there was anything wrong with the house. However, here on appeal, she now argues that there is no evidence that appellees relied on Dobie's representations in the seller's disclosure statement. Because this argument was not raised in the directed-verdict motion, it cannot now be raised on appeal.

### Joint and several liability

Dobie next argues that the trial court erred in ruling that she and the other defendants were jointly and severally liable for the entire judgment of $125,250.00. Dobie first contends that if the jury found that she was guilty of constructive fraud, then appellees are not entitled to a monetary recovery under that theory because constructive fraud is based on the breach of a legal or equitable duty. Therefore, the proper remedy, Dobie argues, is rescission as illustrated by *South County, supra*. Second, Dobie argues that if the jury found that Dobie was guilty of breach of the implied warranties, as one of the verdict interrogatories notes, there can be no joint and several liability because the jury would have found that Dobie

breached a contract. The Uniform Contribution Among Tortfeasors Act only applies to torts. Finally, Dobie argues that the final judgment is fatally flawed because it does not set out the apportionment found by the jury regarding each defendant's percentage of fault.

Appellees argue in reply that first, Appellees elected to maintain an action for money damages instead of rescission, the jury awarded money damages, and money damages have been recovered in other Arkansas constructive-fraud cases. Next, appellees argue that Dobie's motion for summary judgment was granted with regard to the breach of the implied warranties and, therefore, the jury's verdict had to apply to the constructive-fraud claim since the other cause of action was excluded. Finally, appellees note that juries may apportion among joint tortfeasors, but that apportionment is only for the purpose of determining contribution and indemnity among joint tortfeasors and does not affect the plaintiffs' rights.

■ Dobie fails to persuade us that the trial court erred. Dobie offers no controlling legal authority to support her contentions that money damages are unavailable in constructive-fraud cases nor does she demonstrate that joint and several liability is improper in this case. This court has said in the past that it will not do research for an appellant and will affirm a trial judge's decision when the appellant's argument is neither supported by legal authority nor apparent without future research. See Farm Bureau Policy Holders v. Farm Bureau Mut. Ins. Co., 335 Ark. 285, 300-01, 984 S.W.2d 6 (1999). While Dobie cites South County, Inc. v. First Western Loan Co., 315 Ark. 722, S.W.2d 325 (1994) and Miskimins v. The City Nat'l Bank, 248 Ark. 1194, 456 S.W.2d 673 (1970), she fails to explain how these cases support her argument.

■ In addition, Dobie's attorney failed to object at trial to the court's verdict interrogatory submitted to the jury on the issue of joint and several liability. While the appellees' attorney and Kordsmeier's attorney discussed the issue with the judge, and Kordsmeier's attorney lodged an objection to the instruction after the jury returned its verdict, Dobie's attorney did not object or otherwise raise any concerns regarding the apportionment of damages where joint and several liability is found. Accordingly, we affirm the trial court's joint and several liability ruling.

*Implied Warranties*

Dobie argues that the trial court erred in submitting a verdict interrogatory to the jury which included not only the constructive-fraud cause of action, but also the breach-of-implied-warranties cause of action, without instructing the jury that the breach-of-implied-warranties issue had been excluded as to Dobie. Dobie argues that the instructions were highly prejudicial to her, and that it is impossible to tell from the interrogatory which causes of action applied to Dobie, and on which cause of action the jury relied in finding Dobie liable.

Appellees respond by noting that Dobie did not object at trial to the submission of these interrogatories to the jury, and that Dobie is now barred from raising this issue on appeal. In addition, they contend the instruction was proper because the breach-of-the-implied-warranties cause of action was still a viable cause of action against Dobie's ex-husband and, therefore, it was properly before the jury in that interrogatory.

Again, it should be noted that Dobie provides no legal authority for her argument. As previously stated, we will not do research for an appellant and will affirm a trial judge's decision when the appellant's argument is neither supported by legal authority nor apparent without future research. *Farm Bureau Policy Holders, supra.* Nor does the record reflect an objection to the court's ruling. It is well settled that no party may assign as error the giving or failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection. *Union Pac. R.R. Co. v. Sharp,* 330 Ark. 174, 183, 952 S.W.2d 658 (1997); *See also,* Ark. R. Civ. P. 51. In essence, Dobie makes merely an abstract fairness argument without citing a case regarding jury instructions or verdict interrogatories in general. Appellant has not proven error in the record below, and, accordingly, we affirm.

Affirmed.