Daniel DILLARD *v.* Mayme Curry WADE, *et al.*

CA 00-1200                                    45 S.W.3d 848

Court of Appeals of Arkansas
Division III
Opinion delivered May 23, 2001

*Dunn Nutter Morgan & Shaw*, by: *Lisa B. Shoalmire*, for appellant.

*Severns & Long*, by: *Fredye Mac Long*, for appellees.

ANDREE LAYTON ROAF, Judge. Appellees, Mayme Curry Wade, Sherman Wade, Bishop Curry, Cynthia Moore, Veronica Stitt, Alton Stitt, Jr., and Alton Stitt, Sr. ("the heirs"), are owners of a forty-acre tract in Lafayette County. The heirs sued appellant, Daniel Dillard, owner of a two-thirds interest in the timber on the tract, alleging that Dillard wrongfully clear-cut and sold all of the timber on the property. A jury awarded the heirs $41,594.91, which represented one-third of the value of the timber and costs of restoration. Dillard appeals, and argues that the trial court erred in denying his motion for directed verdict and in giving

jury instructions concerning conversion and wrongful cutting of timber. We affirm.

The appellees are the heirs of D.H. Rankin, who acquired the property in question in 1925, and who died intestate in 1939. Dillard, who owns a forty-acre tract adjoining the Rankin property, began contacting the heirs in 1992 in the attempt to purchase their interests in the property. Two of the heirs, Mayme Curry Wade and Cynthia Moore, refused to sell Dillard their interests, but he was successful in acquiring the one-ninth interest of Moore's brother, Clarence Curry, and a one-third timber interest from Paul Rankin, Jr., in 1992 or 1993.

At trial, Mayme Curry Wade testified that when she and her brother, Bishop Curry, went to Lafayette County in early October 1993 to pay the property taxes, they observed that timber was being cut on their tract. Wade testified that she reported the matter to the sheriff and consulted with an attorney, who advised her that Dillard, as a co-tenant, could sue for partition and sale of the property. Consequently, because they did not want to lose the family's land and home place, Wade and her brother agreed to convey their two-ninths timber interest to Dillard in exchange for a deed to the interest he held in the "dirt." There was conflicting testimony about when those deeds were signed; Wade testified that the deeds were signed after she observed timber being cut from the property in early October, however, the deeds were dated and acknowledged in mid-September and on October 1, and Wade's attorney testified that the dates were correct. Nevertheless, after this exchange, Dillard held as co-tenant only a two-thirds undivided timber interest in the property.

Dillard, who testified that he had the timber appraised for $19,000 in June 1993, subsequently wrote the heirs that he would cut the timber on the property by December 31, 1993. He testified that he had paid the heirs $5,333 for their interests and sold his timber interest to Tim Rowe for $9,000.[1] Rowe testified that he paid Dillard $9,000 for his interest, clear-cut all of the timber, knew that Dillard did not own all of the timber interest in the property but did not know the amount he owned, had bought tracts of timber from Dillard in the past, and did not share the sawmill profits

---

[1] Arkansas Code Annotated section 15-32-501 (Repl. 2000) enacted by the legislature in 1995, now provides that a buyer may purchase and remove timber without consent of unknown or unlocatable co-owners or co-heirs when at least eighty percent of the ownership interest in the land has consented.

from the transaction with Dillard. Rowe did not state what these profits were, and the timber deed from Dillard to Rowe introduced into evidence was not dated, acknowledged or recorded. Dillard's expert testified that he did a cruise of the property and assessed the total value of the timber at $19,708.20. The heirs' expert witness testified that he conducted a stump cruise two years after the timber was cut and estimated the value of the timber at $116,784.75, and the restoration costs to be $8,000. The heirs' appraiser also testified that there was a mathematical error in the work-sheet calculations made by Dillard's expert such that his total value of $19,708.20 should be doubled. The jury awarded the heirs one-third of the sum provided by their expert.

■ On appeal, Dillard first argues that the trial court erred in denying his motion for a directed verdict on the basis that there was no evidence that he was responsible for the cutting of the timber on the Rankin estate. When deciding whether the trial court erred in denying a motion of a directed verdict, this court must determine whether there is substantial evidence to support the jury's verdict. *Dobie v. Rogers*, 339 Ark. 242, 5 S.W.3d 30 (1999). Substantial evidence is that degree of evidence sufficient to compel a person to a conclusion without resort to speculation or conjecture. *Id*. This court reviews the evidence and all reasonable inferences in the light most favorable to the party who is awarded the judgment. *Id*.

■■ The heirs sued Dillard for conversion and the wrongful cutting of timber. The tort of conversion is committed when "a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights." *Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995). Dillard asserts that in a wrongful-cutting-of-timber action, the plaintiff must show that he owned the timber in dispute, that the defendant had no authority to sell the timber, and the defendant either cut and removed the timber himself or conveyed the timber which is then cut and removed by another in contradiction of the plaintiff's rights. In support of his argument, Dillard cites *Parker v. Turner*, 219 Ark. 194, 242 S.W.2d 148 (1951). However, *Parker* is a trespass case and does not deal with either the tort of wrongful cutting of timber or conversion by a co-tenant. In *Harnwell v. Arkansas Rice Grower's Co-Op. Ass'n*, 169 Ark. 622, 276 S.W. 371 (1925), involving tenants in common of a rice crop, the supreme court held that, "where one tenant in common of a chattel sells it without the consent of the other, he and the purchasers have converted the property by the act of sale and retention of the proceeds to the exclusion of the rights of the tenant in common who did not authorize the sale." *Id*. In

*Fitzhugh v. Norwood*, 153 Ark. 412, 241 S.W. 8 (1922), the supreme court likewise held that if a tenant in common cuts timber without the consent of one co-tenant, the latter could recover actual damages, as opposed to the treble damages recoverable in an action for trespass against a stranger to the land. Moreover, an interest in timber is an interest in the land. *See Henry Quellmalz Lumber & Mfg. Co. v. Roche*, 145 Ark. 38, 223 S.W. 376 (1920) (holding that a deed to growing trees authorizing the grantee to cut and remove the same within a specified time conveys an interest in the lands). Consequently, it is irrelevant whether the timber was cut after Dillard conveyed his interest in the land back to the heirs as he was a co-tenant with respect to the timber and was liable for conversion, not trespass.

■■ There was sufficient evidence presented from which the jury could conclude that Dillard wrongfully cut or caused all of the timber to be cut from the property, including Dillard's prior business dealings with Rowe, the unrecorded and undated timber deed, and Dillard's failure to advise Rowe of the amount of his ownership interest. Moreover, the jury need not have accepted Dillard's testimony and could have concluded that the sale to Rowe was not an arm's length transaction. The credibility of a witness is a question for the jury to resolve. *Woodward v. State*, 16 Ark. App. 18, 696 S.W.2d 759 (1985).

Dillard also argues that the trial court erred in giving jury instructions concerning conversion and wrongful cutting of timber. However, Dillard objected to the instruction on the basis that a co-tenant could not wrongfully cut or convert the timber interest of another co-tenant and that he thus had the right to cut the timber without the heirs' consent. Dillard does not challenge the substance or wording of the instructions as given, but contends that giving the conversion instruction was improper. Dillard further argues that he was only liable to the heirs for a proportionate share of the profits and benefits he derived from the property pursuant to Arkansas Code Annotated § 18-60-101 (1987). Dillard additionally contends that the jury instructions were improper because there was insufficient evidence from which the jury could conclude that he was a participant in the cutting of the timber, or received any of the proceeds of the sale of the timber cut by Rowe.

■■ This argument must fail because of our resolution of Dillard's first point. We do not agree that there was insufficient evidence for the case to go to the jury, as discussed in the previous point, or that the heirs did not have a cause of action against Dillard

for conversion. Moreover, Dillard did not challenge the measure of damages to be awarded the heirs at trial and does so for the first time on appeal. The appellate court does not address an issue that is raised the first time on appeal. *Beal Bank v. Thornton*, 70 Ark. App. 336, 19 S.W.3d 48 (2000). As the jury instruction was a correct statement of the law, we can not say that the trial court erred in giving it.

Affirmed.

GRIFFEN and VAUGHT, JJ., agree.