

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–13–196

| | |
|---|---|
| JERRY L. CAMPBELL AND JAMES FRANK CAMPBELL, AS EXECUTOR OF THE ESTATE JAMES FINIS CAMPBELL<br><br>APPELLANTS | **Opinion Delivered** February 12, 2014<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT [NO. CV-2007-60] |
| V. | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| MARY GRAF<br><br>APPELLEE | AFFIRMED IN PART; REMANDED IN PART |

## RITA W. GRUBER, Judge

Appellants Jerry L. Campbell and James Frank Campbell filed this action after the death of their father, James Finis Campbell (Mr. Campbell), against Mary Graf. They alleged fraud, conversion, unjust enrichment, and breach of fiduciary duties surrounding Ms. Graf's involvement in and alleged undue influence over Mr. Campbell's financial affairs and in the management of his trust. Ms. Graf denied the allegations and filed a counterclaim, alleging conversion by Jerry and James and asking for repayment of certain funds. The circuit court entered an order dismissing appellants' claims of undue influence and ordering appellants to restore to Ms. Graf funds they removed from Mr. Campbell's accounts. It also awarded Ms. Graf reimbursement for amounts she expended to protect the assets of Mr. Campbell's trust.[1] Appellants bring two points on appeal: (1) the circuit court erred in ordering them to restore

---

[1]This finding of reimbursement was not appealed.

money withdrawn from Mr. Campbell's bank accounts; and (2) the circuit court erred in denying their request for setoff of $11,000 of Mr. Campbell's money that was allegedly spent by Ms. Graf solely for her own benefit. We remand with regard to point one and affirm regarding point two.

Mr. Campbell passed away on December 15, 2006, at the age of ninety-two. Appellants are his only surviving children. This lawsuit concerns the disposition of some of Mr. Campbell's assets. A brief history of the facts surrounding these assets is helpful. After the death of Mr. Campbell's wife in 1999, he executed a will and trust, pursuant to which all of his assets would flow from his estate into the James Finis Campbell Family Trust. In 2003, Mr. Campbell met Ms. Graf, and the two remained close companions until his death. Despite Mr. Campbell's numerous marriage proposals, they never married. At Mr. Campbell's death, his trust named Ms. Graf as successor trustee.

Twice in 2003, Mr. Campbell made amendments to the trust, leaving one condo that he owned to Ms. Graf in the first amendment and leaving two condos to Ms. Graf in the second amendment. On January 10, 2005, he again amended the trust, deleting Ms. Graf as a beneficiary under the trust and leaving all of his property to appellants. On March 9, 2005, appellants filed a petition for guardianship of Mr. Campbell, alleging that he lacked capacity to manage his affairs. Mr. Campbell's deposition was taken and he was evaluated by a neurologist who, according to the court, found him competent and gave a glowing appraisal of his mental capacity and awareness. Appellants voluntarily dismissed the petition in October 2005. During the pendency of this guardianship case, on March 22, 2005, Mr. Campbell

2

executed a fourth amendment to the trust, leaving one-sixth of his estate to each of six beneficiaries, including Ms. Graf and each of the appellants.

At some point during their relationship, Ms. Graf and Mr. Campbell bought a condo together, which they held as rental property before Ms. Graf sold her house. They each paid $21,000 for the property and took out a loan for the balance. They maintained a joint bank account at Bank of the Ozarks into which they put the rental proceeds. They then used these funds to pay the mortgage, dues, and related expenses for the jointly owned condo. After Ms. Graf sold her house, she paid Mr. Campbell $21,000 for his share of the condo and moved in. Mr. Campbell deposited $11,000 of that payment into their joint account, and Ms. Graf used the money to pay expenses for the condo.

In addition to the joint account at Bank of the Ozarks, Mr. Campbell had several accounts at Regions Bank, including a checking account that was payable on death to Ms. Graf and a $25,000 certificate of deposit. It was the funds from these Regions accounts that Ms. Graf alleged appellants had converted and that the court ordered appellants to return. Although the parties dispute whether appellants should be required to return the funds, they do not dispute that appellants procured the funds through a longtime neighbor of Mr. Campbell, Frances Dubach.

Ms. Dubach testified at the hearing that Mr. Campbell had given her a general durable power of attorney in March 2005 in order to sign an extension of a contract he had entered into for the sale of his condo. She said that Ms. Graf called her and told her that the realtor would bring her a power of attorney so that she could sign an extension for the closing. She

said that James had called her after that transaction asking her "what was going on," and she told him she did not want to have Mr. Campbell's power of attorney. Jerry's wife, Lindalyn, brought papers for her to sign to revoke the power of attorney, but Ms. Dubach said that James and Jerry thought it might be to their advantage to have someone on their side, so she did not revoke it. In early December 2006, while Mr. Campbell was in hospice care, appellants, through Lindalyn, contacted Ms. Dubach to ask if she would go with them to Regions Bank. On December 7, 2006, Ms. Dubach, accompanied by Lindalyn and Jerry,[2] went to Regions, taking Ms. Dubach's power of attorney, and changed the ownership of several of Mr. Campbell's accounts. James and Jerry were added as co-owners of a checking account (containing approximately $41,000 at that time), which was payable on death to Mary Graf, and as co-owners of Mr. Campbell's CD, worth $25,000. While it is not clear from the briefs exactly when these funds were removed by James and Jerry, it is clear that they took the money out of these accounts. Mr. Campbell died on December 15, 2006.

This lawsuit began when James and Jerry filed a complaint against Ms. Graf on February 20, 2007. Their final complaint, the third amended complaint, was filed on February 28, 2008, and alleged in relevant part that Ms. Graf had breached her duties as trustee of Mr. Campbell's trust, that Ms. Graf had a power of attorney for Mr. Campbell, and that she had "taken control over him, isolating him from family members and others." Appellants alleged that she deposited $11,000 that she paid Mr. Campbell for his share in their jointly owned condo into a Bank of the Ozarks account controlled by her. According

---

[2]Appellants dispute whether Jerry was present at the Bank.

to the complaint, Ms. Graf proceeded to convert this money to her sole use and benefit. In Ms. Graf's amended answer to third amended complaint and amended counterclaim, she denied their allegations, but admitted that she purchased Mr. Campbell's share of their jointly owned condo for $21,000. She alleged "on information and belief" that he deposited $10,000 of that amount into one of his Regions Bank accounts and that he deposited $11,000 into their jointly owned account on February 15, 2005. She affirmatively claimed that appellants unlawfully converted to their own use $78,000 of the cash assets that belonged to the James F. Campbell Estate, and thus to the trust, which was the sole beneficiary of the estate. Specifically, she alleged that Ms. Dubach, as appointed attorney in fact for Mr. Campbell through her power of attorney, agreed to assist appellants and Lindalyn in changing ownership of Mr. Campbell's Regions Bank accounts without Mr. Campbell's knowledge and consent. She contended that appellants then removed all funds from the accounts, totaling more than $78,000. They then represented to Ms. Graf that the estate had no money, causing the mortgage holder on Mr. Campbell's condos to foreclose on the condos belonging to the trust. She also alleged that appellants had attempted to perpetrate a fraud upon the court by concealing assets of the estate and trust. She asked the court to dismiss appellants' complaint and order them to pay the estate $78,000 plus interest.

After the hearing, the circuit court entered an order dismissing appellants' claims for lack of capacity and lack of competence of Mr. Campbell and for undue influence by Ms. Graf. The court found that the fourth amendment to the trust was the operative document for distribution of trust assets and ordered the assets to be gathered by Ms. Graf, the trustee,

and distributed pursuant to the trust. The court also ordered appellants to restore to Ms. Graf the funds removed by them due to Ms. Dubach's change of ownership of the accounts on December 7, 2006. Specifically, the court ordered appellants to pay $40,449.75, representing the balance of the amount in the payable on death account, and $25,000, representing the balance of the certificate of deposit. The court also ordered appellants to restore to themselves and Ms. Graf $8,759.62, representing the balance of another Regions checking account they had liquidated. Finally, the court awarded to Ms. Graf $21,623.04 to be satisfied from the trust assets for sums she spent to protect trust assets.

When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is whether the court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Buck v. Gillham*, 80 Ark. App. 375, 378–79, 96 S.W.3d 750, 753 (2003). Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998).

## I.

For their first point on appeal, appellants contend that the circuit court erred in ordering them to restore money that was withdrawn from bank accounts by the rightful owners of the accounts. Specifically, they argue that the general power of attorney given by Mr. Campbell to Ms. Dubach was valid and gave her authority to change the ownership of the accounts. They argue that, because the court did not make a finding that the power of attorney was invalid and because they removed the funds "well before" the court ordered the accounts frozen, there was no basis for ordering them to restore the money.



The relevant portions of the power of attorney to Ms. Dubach provide as follows:

I, JAMES F. CAMPBELL, a resident of Van Buren County, Arkansas, do hereby designate FRANCES DUBACH, as my agent and attorney (subsequently called my agent), in my name and for my benefit:

1. <u>General Grant of Power</u>. To exercise or perform any act, power, duty, right or obligation whatsoever that I now have or may hereinafter acquire relating to any property, real or personal, tangible or intangible, now owned or hereafter acquired by me, including, without limitation, the following specifically enumerated powers, I grant to my agent full power and authority to do everything necessary in exercising any of the powers herein granted as fully as I might or could do if personally present, with full power of substitution or revocation, hereto ratifying and confirming all that my agent shall lawfully do or cause to be done by virtue of this power of attorney and the powers herein granted.

. . .

D. <u>Banking Powers</u>. To make, receive and endorse checks and drafts, deposit and withdraw funds, acquire and redeem certificates of deposit in banks, savings and loan associations and other institutions, execute or lease such deeds of trust of other security agreements as may be necessary or proper in the exercise of the rights and powers herein granted;

. . . .

2. <u>Interpretation and Government Law</u>. This instrument is to be construed and interpreted as a general durable power of attorney. The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general power herein granted to my agent. This instrument is executed and delivered in the State of Arkansas, and the laws of the State of Arkansas shall govern all questions as to the validity of this power and the construction of its provisions.

The court's order contains nothing to indicate whether it found this power of attorney valid or invalid. And, although the court recognized on the first page of its seven-page order that Ms. Graf filed a counterclaim for conversion, it also did not indicate whether it found that appellants had converted these funds. Ms. Graf's counterclaim alleged that appellants unlawfully converted to their own use $78,000 of the cash assets belonging to the

James F. Campbell Estate, and thus to the trust, which was the sole beneficiary of the estate. Specifically, she alleged that they persuaded Ms. Dubach, who held a power of attorney for Mr. Campbell, to assist them in changing ownership of Mr. Campbell's accounts without his knowledge and consent. She contended that appellants then removed all funds from the accounts, totaling more than $78,000. They were able to do this precisely because Ms. Dubach had the apparent authority to change ownership of the accounts.

Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998). The tort of conversion is committed when a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights. *Dillard v. Wade*, 74 Ark. App. 38, 45 S.W.3d 848 (2001). The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights. *Volgelgesang v. Volgelgesang*, 2010 Ark. App. 178, at 4 (affirming finding of conversion from victim's bank account that were initially procured through a power of attorney).

The relevant part of the court's order provides as follows:

> It is further considered, ordered; and adjudged that the accounts payable upon death shall be restored to the owner of the accounts prior to the December 7, 2006 change of ownership under Frances Dubach's power of attorney; specifically, that the plaintiffs Jerry Campbell and James Frank Campbell jointly and severally should be and are hereby ordered to restore to Mary Graf by payment to her forty thousand four hundred forty nine dollar [sic] and seventy five dollars ($40,449.75) [sic] representing the December 6, 2006 balance of Regions Bank Checking No. [ ], and twenty five thousand dollars ($25,000.00) representing the balance of Regions Bank Certificate of Deposit No. [ ]on the December 6, 2006 before the transfer of ownership; and that Jerry Campbell and James Frank Campbell jointly and severally should be and are

SLIP OPINION

SLIP OPINION

hereby ordered to restore to themselves and Mary Graf jointly eight thousand seven hundred fifty nine dollars ($8,759.62) [sic] representing the balance of Regions CheckingAccount No. [ ]before the December 7, 2006 change of ownership[.]

The only finding to support this is contained in paragraph 23:

> The accounts payable upon death shall be restored to the owner to the accounts prior to the December 7, 2006 change of ownership under Ms. Dubach's power of attorney. The plaintiffs Jerry L. Campbell and James Frank Campbell shall be ordered to pay to Mary Graf the December 6, 2006 balance of Regions Bank checking account no. [ ] of Forty thousand four hundred forty nine dollars and seventy five cents ($40,449.75) and Regions Bank Certificate of Deposit No. [ ] of twenty five thousand dollars ($25,000); and to restore to Mary Graf and the plaintiffs jointly eight thousand seven hundred fity seven dollars and sixty two cents ($8,759.62), representing the December 6, 2006 balance in Regions Checking Account no. [ ].

The circuit court made no findings regarding whether Ms. Dubach's power of attorney was valid or whether Ms. Graf established her claim for conversion. It is unclear from this order on what basis the court required appellants to return the funds. We cannot review this portion of the court's order on appeal without findings sufficient to explain and support the court's ruling. Therefore, we remand for further findings on this issue.

## II.

For their second point on appeal, appellants argue that the court erred in not awarding them a setoff of $11,000 they claim belonged to Mr. Campbell that Ms. Graf spent solely for her own benefit. They suggest that Ms. Graf fraudulently converted this money to her own use. Mr. Campbell testified in a deposition taken during the guardianship proceeding that Ms. Graf paid him $21,000 for his interest in their jointly owned condo. He said that part of that $21,000 was used to pay a bill that he owed to a retirement home and that Ms. Graf "gave [him] a check for the difference of $11,000," which he put into their jointly owned

account. Ms. Graf testified at the hearing in this case that she paid Mr. Campbell $21,000 for his interest in the condo and that $11,000 of that amount was deposited into their joint account.

Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). In this case, appellants do not argue that the account was not a joint account, co-owned by Mr. Campbell and Ms. Graf. Rather, they claim that Ms. Graf, and not Mr. Campbell, deposited the $11,000 check into the account and then spent it solely for her own benefit. The circuit court determined that Mr. Campbell voluntarily deposited this $11,000 into an account jointly owned by Mr. Campbell and Ms. Graf. It found that this act was not done under the exertion of undue influence by Ms. Graf.

Generally, funds deposited into a joint account are owned by both parties. Ark. Code Ann. § 23-47-204 (Repl. 2012). Moreover, contrary to appellants' argument that Ms. Graf testified that she put the $11,000 into the account, Ms. Graf said only that $11,000 was put into their joint account. She did not indicate by whom. Mr. Campbell testified that he deposited the check. This is a matter of credibility for the fact-finder. Appellants have failed to demonstrate that the circuit court clearly erred on this issue.

Accordingly, we affirm the court's denial of appellants' request for a setoff as stated above. With regard to the court's ruling requiring appellants to restore funds taken by them from Mr. Campbell's Regions accounts, we remand for further findings to clarify the court's order.

Cite as 2014 Ark. App. 98

Affirmed in part; remanded in part for further findings.

WHITEAKER and VAUGHT, JJ., agree.

*Robert A. Newcomb*, for appellants.

*Grayson & Grayson, P.A.*, by: *Keith L. Grayson*, *Melanie L. Grayson*, and *Ginger L. Grayson*; and *Jerry C. Post*, for appellee.