HUGGINS *v.* WACASTER.

5-363          266 S. W. 2d 58

Opinion delivered March 29, 1954.

*Mark E. Woolsey* and *Yates & Yates,* for appellant.

*G. C. Carter* and *John J. Cravens,* for appellee.

GEORGE ROSE SMITH, J. This is a dispute among three claimants to the office of county clerk of Franklin County. Huggins, one of the appellants, asserts title to the office by virtue of his election thereto at the general election held on November 4, 1952. Wacaster, the plaintiff below, bases his claim to the office upon his appointment thereto by the governor, under Act 256 of 1953. Anderson, the other appellant, is the circuit clerk of the county and contends that he is thereby *ex officio* county clerk.

The controversy is occasioned by the fact that, according to the 1950 federal census, the population of Franklin County fell below 15,000. Until the adoption of Amendment 41 our constitution provided that the circuit clerk should be *ex officio* county clerk, except that "in any county having a population exceeding fifteen thousand inhabitants, as shown by the last Federal census, there shall be elected a county clerk, in like manner as the clerk of the circuit court . . ." Art. 7, § 19.

In 1890 Franklin County's population first exceeded 15,000, and for the next sixty years the county had a separate county clerk. But when the 1950 census results were announced in April, 1951, it was disclosed that the county's population had dropped to 12,358. Nevertheless Huggins was nominated for the county clerkship in the summer of 1952 and was ostensibly elected to the office at the general election in November. He assumed the office on January 1, 1953, and served until his removal by the court below.

Huggins makes two contentions to support his claim to the position. First, it is insisted that even though a county's population must exceed 15,000 before the county clerkship becomes an office in itself, a later decline in population does not return the duties of the office to the circuit clerk. Upon this theory the separate office continued in spite of the 1950 census results, so that Huggins' election was valid.

The language of the constitution does not sustain this argument. The constitutional convention, having in mind economy in government, evidently believed that the need for a separate clerk is not sufficiently great in the less populous counties to justify the extra expense to the taxpayers. Hence a separate county clerk was provided only for those counties having more than 15,000 inhabitants "as shown by the last Federal census." As we reasoned in *Childers* v. *Duvall*, 69 Ark. 336, 63 S. W. 802: "This is the condition upon which the county is allowed two clerks. It (the convention) did not intend that the federal census of 1870, which was the last census at the time the constitution of 1874 was adopted, should for all time determine when the condition for which it provided existed. It provided for counties having a population in excess of 15,000 inhabitants. This is a condition, present and future, for which it provided. There was and is no reason for discrimination in favor of one county against another of the same population." Yet such discrimination would result if Huggins' position were now approved. One of two equally populous counties might have an extra clerk

merely because its population had exceeded 15,000 in some past decade. It was to prevent such inequalities that the convention chose the *last* census as the controlling factor. We must give effect to the plain words of the constitution.

Second, Huggins contends that Amendment 41 created a separate county clerkship for every county in the State. This amendment was adopted at the general election held on November 4, 1952—the day of Huggins' ostensible election to the office in dispute. The amendment reads in part: "The provisions for the election of a County Clerk upon a population basis are hereby abolished and there may be elected a County Clerk in like manner as a Circuit Clerk."

We do not think this amendment had the effect that Huggins seeks to attribute to it. The original constitution had provided that in counties having more than 15,000 people there *shall* be elected a county clerk. (It may be noted parenthetically that as first drafted Amendment 41 also contained the word "shall," which was later changed to "may." Senate Journal, 1951, Vol. 2, p. 1512. We do not regard this fact as controlling, for the question is what the public intended when the amendment was voted upon.) But Amendment 41, after abolishing the population requirement, provides that there *may* be elected a county clerk. Thus the original provision was mandatory, but the amendment is merely permissive. It was not intended that the amendment should force an additional public office upon even the least populous county, where there might be no need for it. We must conclude that the amendment is not self-executing. Hence enabling legislation is needed for the creation of a new clerkship in those counties not having a separate clerk when Amendment 41 took effect. Since there was no enabling act for Franklin County at the time of Huggins' asserted election, his claim fails, for he was a candidate for a nonexistent office. *Childers v. Duvall, supra.*

Wacaster, the appellee, contends that Act 256 of 1953, under which he was appointed to the office, con-

stitutes the enabling legislation that is lacking in Huggins' case. This Act, approved March 10, 1953, undertook to create the separate office of county clerk in Franklin County, under the authority of Amendment 41. By its terms Act 256 is a local act, applicable only to Franklin County. The question is whether it violates Amendment 14, which prohibits local or special legislation.

It has long been settled that an act which applies to only one county contravenes Amendment 14. Wacaster insists, however, that Act 256 falls within the rule which permits the enactment of special legislation dealing with the administration of justice. The rule does not go far enough to reach the present case. Acts affecting purely judicial officers, such as a court reporter or the Pulaski chancery clerk, have been upheld. *McLellan* v. *Pledger,* 209 Ark. 159, 189 S. W. 2d 789; *Buzbee* v. *Hutton,* 186 Ark. 134, 52 S. W. 2d 647. But many, if not most, of a county clerk's duties are administrative in character. It has already been held that local legislation dealing with the office of county clerk is unconstitutional. *Cannon* v. *May,* 183 Ark. 107, 35 S. W. 2d 70. Act 256 cannot be upheld upon the theory that it affects the administration of justice.

We must also consider the possibility that Amendment 41 impliedly amended Amendment 14, putting the office of county clerk in the unique position of being immune to the ban against local legislation. It is true, as we have seen, that Amendment 41 requires enabling legislation for its operation; but the question is, may these enabling laws be framed without regard to the basic prohibition against local acts?

Our cases shed much light on this issue. For some years after the adoption of Amendment 14 it was contended that the prohibition against local and special laws should not apply in any field as to which the General Assembly was given express legislative authority by some other provision of the constitution. Anderson, Special and Local Acts in Arkansas, 3 Ark. L. Rev. 113,

116. But this view, which would have stripped Amendment 14 of much of its force, did not gain acceptance by a majority of the court. It was finally laid at rest in *Smith* v. *Cole,* 187 Ark. 471, 61 S. W. 2d 55, where we said: "In our opinion it is immaterial whether or not local legislation is induced by constitutional mandate or is passed because not prohibited by the Constitution . . . It is the duty of this court to harmonize all provisions of the Constitution and amendments thereto and to construe them with the view of a harmonious whole."

It was with this background of interpretation that Amendment 41 was written and approved. Had there been any intention of putting the office of county clerk in a class all by itself, subject to local legislation as no other county administrative office is, we should expect to find in its language some intimation of that purpose. But that intimation is not to be found. The amendment declares simply that county clerks may be elected in like manner as circuit clerks. Of course legislation affecting circuit clerks must be general rather than special. In the case of county clerks we are not authorized to read into the constitution an exception that is not there. We conclude that, apart from the possibility that a separate county clerkship may be created by the county electorate acting under Amendment 7, the enabling legislation contemplated by Amendment 41 must conform to the constitutional requirement that it be general. Act 256 is a local law that is prohibited by Amendment 14.

The result is that in Franklin County the office of county clerk does not have a separate existence. Its duties therefore fall upon the circuit clerk, acting *ex officio.*

Reversed.