2012 Ark. App. 232

**GUY MARIS TRUST, Eugene Maris, and Mahlon O. Maris, Appellants**

v.

**Zachary W. "Woody" TRUEMPER, John J. Truemper, Jr., Julia Clare Truemper, Blue II Land Corporation, Ron Shamlin, and Ron Shamlin, Jr., Appellees.**

No. CA 11–554.

Court of Appeals of Arkansas.

April 4, 2012.

Ralph M. Cloar, Jr., Little Rock, Brian G. Brooks, Greenbrier, for appellants.

Mitchell L. Berry, Eichenbaum, Liles & Heister, P.A., Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

This case involves the alleged wrongful cutting of timber. Appellants Guy Maris

Trust, Eugene "Pete" Maris, and Mahlon Maris appeal from the orders of the Pulaski County Circuit Court granting summary judgment and dismissing their claims against appellees John Truemper, Julia Truemper, and Blue II Land Corporation (sometimes referred to as "the corporation"), asserting that there are genuine issues of material fact as to whether the Truempers were involved in the cutting of the timber. We affirm in part and reverse and remand in part.

The Marises and the Truempers are the co-owners of four tracts of land in Pulaski County. The first two are commonly referred to by the parties as Blue Hole. The other two tracts are referred to as Blue II.[1]

In September 2001, Ron Shamlin, Jr., of Arkansas Timber & Logging wrote a letter to Julia Truemper soliciting her business for tree harvesting off the subject property. It is not clear whether Shamlin was referring to Blue Hole, Blue II, or both tracts. The letter stated that the timber company "found the ownership map for Pulaski County reflects that you own several acres of property bearing timber." Shamlin requested Truemper's permission to "look over" the property to estimate the timber's value. Shamlin presented Truemper with a choice between "select-cut" or "clear-cut" and assured her that "all work is done by contract."

On November 23, 2002, the Truempers' son, Zachary "Woody" Truemper, entered a Timber Sales Agreement as the "Seller" with Arkansas Timber & Logging as the "Buyer" for the purpose of cutting and removing timber from the property. The agreement described the property as forty acres but did not specify either the Blue Hole property or the Blue II property. It identified that pine timber would be removed and specified "Grade Pine Logs" at $30 per ton and "Pine" at $20 per ton. The agreement provided eighteen months from its date to cut and remove the timber. Woody Truemper, as seller, warranted and represented that he had good merchantable title to the property, had the right to sell the timber, and agreed to indemnify and hold the timber company harmless from any loss from any claims to the contrary.

The cutting of the timber occurred in December 2002 and January 2003. The Marises filed suit on March 26, 2007, against John Truemper, Julia Truemper, Woody Truemper, Blue II Land Corporation, Ron Shamlin, and Ron Shamlin, Jr., setting forth causes of action for wrongful cutting of timber pursuant to Ark.Code Ann. § 15–32–501 (Repl.2009), conversion, civil conspiracy, and negligence.[2] The complaint alleged that Woody Truemper was acting as the agent for his parents in negotiating the sale of the timber and that his actions, as well as those of the Shamlins, should be imputed to John and Julia Truemper.

Julia and John Truemper and the corporation answered and denied that Woody Truemper was acting as their agent or had authority to act for them or that they had anything to do with the timber harvest of

---

1. The Marises own a one-fifth interest in Blue Hole and a three-tenths interest in Blue II. It is unclear whether John and Julia Truemper or the corporation owns the other seven-tenths interest in Blue II. During the course of this litigation, the Truempers asserted that they turned their interest in Blue II over to their children, who formed the corporation to hold the ownership of Blue II. However, no documentation was submitted showing that the ownership had been transferred by the Truempers. The Truempers also denied having any interest in the corporation.

2. The Marises originally filed suit in February 2004. That case was dismissed without prejudice in April 2006.

the Blue Hole property. Woody Truemper filed a separate answer and denied the allegations of the complaint.

On April 7, 2008, John and Julia Truemper and the corporation filed a motion for summary judgment, seeking dismissal of the Marises' lawsuit. Woody Truemper's affidavit was attached, stating that his parents never gave him authority to harvest timber on Blue Hole and that he was only given authority to cut down some dangerous trees surrounding the home on Blue Hole. John Truemper stated in his affidavit that he did not have any interest in either the Blue II property or the corporation and that he did not give Woody permission to harvest trees from Blue Hole. He added that, after some trees were harvested from Blue II, he asked Woody to have the loggers cut down some trees at Blue Hole that were damaged in an ice storm and posed a danger to the Truempers' home. He asserted that, if the timber cutters took more than the "few trees that were a safety threat," they exceeded the instructions that he gave Woody. Julia Truemper likewise stated in her affidavit that she did not have any interest in either the Blue II property or the corporation and that she did not give Woody permission to harvest trees from Blue Hole. She stated that she had never spoken with or communicated with the Shamlins in any way. She also recounted a telephone conversation with Pete Maris and said that her statement to Maris that "we have turned it over to Bebo and Woody and you will have to talk with them" meant that she and her husband did not own the Blue II property.

In their response to the motion, the Marises relied on a letter written by Julia Truemper, dated January 1, 2003, to Pete Maris, explaining the reason for the tree cutting at Blue Hole. The letter stated that the cutting was done for safety reasons, that some of the trees were dead or damaged, and that limbs from the trees had narrowly missed hitting family members and structures. The letter also stated that the Marises "will, of course, be compensated for your 1/5 interest in the timber[.]" The Marises argued that the facts stated in the letter were inconsistent with the facts stated in the Truempers' affidavits. They also argued that a statement Julia Truemper made to Pete Maris that "we have turned it over to Bebo and Woody and you will have to talk with them" meant that Woody Truemper had full authority to act for John and Julia Truemper in this matter. Pete Maris averred in his affidavit that he did not know that the Truempers were contemplating harvesting trees, that he was not contacted to seek his permission, and that he did not want the trees cut. He also said that it was his understanding from his December 2002 telephone conversation with Julia Truemper in which she made the comment "we turned it over to Bebo and Woody" that she had turned the tree cutting over to Woody.

Julia Truemper submitted a second affidavit in which she said that the statement regarding turning the matter over to Woody meant that she and her husband had turned the ownership of the Blue II property over to Woody and that the timber cutting did not have anything to do with Blue Hole except to remove the few dangerous and damaged trees.

The circuit court, by order entered on October 31, 2008, granted the Truempers' motion in part and dismissed the statutory, conspiracy, and conversion counts against them and the corporation. The court ruled that Ark.Code Ann. § 15–32–501 did not provide the Marises with a cause of action against John and Julia Truemper or the corporation for the wrongful cutting of the timber. The court, however, denied

summary judgment on the negligence claim against the Truempers and the corporation.

The Truempers and the corporation filed both a second motion for summary judgment and a "renewed" motion for summary judgment on the remaining negligence count. They submitted the affidavits of John, Julia, and Woody Truemper described above.

The "renewed" motion asserted that Pete Maris's deposition established that the Marises' negligence claim was based on conjecture and speculation. Pete Maris testified in his deposition that he did not have any evidence that Julia Truemper allowed the Shamlins to cut and remove the timber. He also said that he did not have any evidence that the Truempers were aware that the timber was being cut. Maris said that he assumed Julia Truemper's statement that she had turned it over to Bebo and Woody indicated that she was involved in the tree cutting.

The Marises relied on the affidavit that Pete Maris had previously submitted and did not submit any other evidence in opposition to the renewed motion. Instead, they argued that the evidence submitted showed that there were genuine issues of material fact as to whether the Truempers gave Woody Truemper authority to harvest timber on Blue Hole. They also argued that the evidence showed that there were issues of whether the Truempers were negligent in their supervision of Woody and the tree cutters.

After originally denying both the second motion and the "renewed" motion, the circuit court entered an order on August 28, 2009, granting summary judgment and dismissing all remaining claims against Julia and John Truemper and the corporation. The case against Woody Truemper and the Shamlins proceeded.

A final order entered on February 16, 2011, recites that on November 16, 2009, the court found for the Marises on their negligence claim against Woody Truemper in the amount of $3,143.64; that on April 26, 2010, the court entered a default judgment against the Shamlins for treble damages of $29,345 plus clean-up expenses of $3,000; that this order dismissed all counts against Julia and John Truemper and the corporation; and that the statutory wrongful cutting of timber, civil conspiracy, and conversion claims against Woody Truemper were dismissed. The Marises filed their notice of appeal on March 9, 2011, appealing all previous adverse rulings of the court.

Our standard of review is well settled in cases involving the grant of summary judgment:

In reviewing summary judgment cases, this court need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. The moving party always bears the burden of sustaining a motion for summary judgment. All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once the moving party makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof showing a material issue of fact. However, if a moving party fails to offer proof on a controverted

issue, summary judgment is not appropriate, regardless of whether the non-moving party presents the court with any countervailing evidence.

*Fort Smith Sch. Dist. v. Beebe,* 2009 Ark. 333, at 4, 322 S.W.3d 1, 3–4 (citations omitted).

On appeal, the Marises contend that the circuit court erred in granting summary judgment to the Truempers because a question of fact exists as to whether the Truempers authorized the timber harvest and should be held liable for wrongful cutting, civil conspiracy, conversion, and negligence, as well as punitive damages.

■ For their statutory cause of action, the Marises rely on Ark.Code Ann. § 15–32–501 (Repl.2009). They specifically rely on section 15–32–501(c)(2). We conclude that section 15–32–501 does not apply to these facts. This statute allows timber to be sold and removed from land when at least eighty percent of the co-owners or co-heirs of the property enter into |₈a contract with the timber buyer, and the remaining co-owners or co-heirs cannot be located. Ark.Code Ann. § 15–32–501(b)(1)(A). The timber buyer can purchase and remove timber from property upon obtaining the consent of eighty percent or more of the co-owners or co-heirs if he makes a "diligent search and inquiry" for the remaining owners. Ark.Code Ann. § 15–32–501(b). Failure of a timber buyer to conduct a diligent search, or failure to contract with located co-owners or co-heirs, makes the buyer liable to those persons for treble the damages caused by any removal of timber. Ark.Code Ann. § 15–32–501(b)(3), (b)(4).

■ The statute speaks in terms of the *buyer* being liable if he does not conduct a diligent inquiry into the other owners of the property or, knowing of the other owners, fails to contract with them.

Multiple-damage statutes, being penal in nature, must be strictly construed. *Heral v. Smith,* 33 Ark.App. 143, 803 S.W.2d 938 (1991). The Marises rely on the indemnity provisions in subsection (c)(2) to argue that this creates a remedy against the Truempers. That subsection provides that the consenting co-owners shall agree to indemnify and hold harmless the non-consenting co-owners for any damage or injury claims which may result from the timber operations. The circuit court interpreted subsection (c)(2) as applying to the situation where a third party is damaged by the timber cutting operations and sues the non-consenting owner, and provides that the parties consenting to the timber operation would be responsible for the damages to the third party. We are not bound by the circuit court's decision interpreting a statute; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *State Farm Mut. Auto. Ins. Co. v. Henderson,* 356 Ark. 335, 150 S.W.3d 276 (2004). We believe that the circuit court's |₉interpretation of subsection (c)(2) is correct. Summary judgment is appropriate when the issue on appeal is purely one of law, involving the interpretation of a statute. *Id.*

The Marises next argue that the circuit court erred in granting summary judgment to the Truempers on the conversion claim. The circuit court ruled that there was not a sufficient factual dispute as to the contents of the letters and conversations between Woody Truemper and his parents to maintain the conversion action. We agree with the Marises.

■ A cause of action for conversion lies where one co-tenant cuts timber without the consent of another co-tenant. *Dillard v. Wade,* 74 Ark.App. 38, 45 S.W.3d 848 (2001). In that situation, the defendant would be liable for actual damages, as

opposed to treble damages. *Id.* (citing *Fitzhugh v. Norwood,* 153 Ark. 412, 241 S.W. 8 (1922)). The issue is whether there is sufficient evidence to create an issue of fact as to whether Woody Truemper was acting as agent for his parents when he had the trees cut from Blue Hole in order to survive summary judgment.

The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control and that the other consents to so act. *Reed v. Smith Steel, Inc.,* 77 Ark.App. 110, 78 S.W.3d 118 (2002). The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. *Id.* If the facts are in dispute, agency is a question of fact to be determined by the finder of fact. *Id.* Agency can be proved by circumstantial evidence, if the facts and circumstances introduced into evidence are sufficient to induce in the mind of the finder of fact the belief that the relation did exist and that the agent was acting for the principal in the transaction involved. *Id.* The law makes no distinction between direct evidence of a fact and circumstances from which a fact can be inferred. *Id.* Ordinarily, whether an agent is acting within the scope of actual or apparent authority is a question of fact for the jury to determine. *Crail v. Nw. Nat'l Ins. Co.,* 282 Ark. 175, 666 S.W.2d 706 (1984); *Sterne, Agee & Leach, Inc. v. Way,* 101 Ark.App. 23, 31, 270 S.W.3d 369, 376 (2007).

The Truempers rely on Pete Maris's deposition testimony that he did not have any evidence that John and Julia Truemper were involved in the timber cutting in arguing that they are entitled to summary judgment. However, the materials the Truempers themselves submitted create a question of fact. John Truemper's affidavit clearly shows that he gave Woody Truemper authority to have at least some dead or damaged trees cut down on Blue Hole. He also said that "[i]f the tree cutters cut any more trees than those few trees that were a safety threat, they went beyond the instructions that I gave Woody." Julia Truemper's letter of January 1, 2003, to Pete Maris likewise indicates that she and her husband asked that some trees be cut down at Blue Hole. There are also the circumstances surrounding Julia Truemper's receipt of the 2001 letter from Ron Shamlin, Jr., and her later statement that she and her husband had turned the matter over to Woody and Bebo. A jury could conclude that this was a statement indicating that the Truempers were turning the timber operation over to Bebo and Woody. Julia Truemper said that the statement meant that they had turned ownership of the property over to Woody and Bebo. However, the issue of intent is a question of fact. *Dugal Logging, Inc. v. Ark. Pulpwood Co.,* 66 Ark. App. 22, 988 S.W.2d 25 (1999). Based on this evidence, there are genuine issues of material fact because, on a motion for summary judgment, all proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Fort Smith Sch. Dist., supra,* at 4, 322 S.W.3d at 3–4.

The summary judgment in favor of the Truempers on the civil conspiracy and negligence claims was based on there being no evidence that they were involved in having the timber cut. Because the civil conspiracy and negligence counts rely on the same evidence that we have already held is in dispute so that a jury trial is necessary, we reverse the summary judgment on those counts. Because we reverse and remand for a jury trial, the issue of punitive damages should likewise be reserved for trial.

Affirmed in part and reversed and remanded in part.

VAUGHT, C.J., and HART, J., agree.