

NUMBER 13-11-00568-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ROBERT CANO,                                                      Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

**On appeal from the 377th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Perkes**

Appellant, Robert Cano, appeals his conviction for burglary of a habitation,[1] a second degree felony enhanced by prior offenses to a first degree felony.[2]  By a single issue, appellant contends that the evidence is insufficient to support his conviction.  We affirm.

---

[1]  *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011).

[2]  *See Id.* §§ 12.42(b); 30.02(c)(2).

# I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Nine-year-old K.C.[4] was awakened in the early morning when she heard someone knocking on the front door. She went to the window by the front door, "tipped up" the blinds, and peeked outside. She saw a man wearing a black leather jacket, black pants, and a black cap with some red on it. Since she did not recognize the man, she woke up her mother, Victoria Canales, and told her that someone was at the front door. Her mother told her to ignore it and to go back to bed.

As K.C. walked back to her bedroom, she heard a sound like a window opening in the kitchen. She went to the living room, which was adjacent to the kitchen; she had a clear line-of-sight to the kitchen. She saw the blinds and curtains that covered the window pushing inward "[l]ike somebody was coming in"—"like the head coming in." She ran and told her mother that someone was climbing into the house through the window.

Canales jumped out of bed and ran "to the kitchen area," where she saw "a figure of a body coming into the window" and crouching in the kitchen. When asked at trial, "Was the figure of a body inside your kitchen," Canales responded, "Yes." However, she never saw the person's face because the blinds and curtains covered the window. She yelled at the intruder, who quickly exited and left.

Canales and K.C. went outside. They saw two individuals, a man and a woman, in the distance, walking down the street. K.C. noticed that the man was wearing the same clothes as the man who had knocked on the door.

---

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[4] We use the alias "K.C." to protect the identity of the minor child declarant.

While Canales and K.C. stood there, Canales's father, Victor Trevino, who lived about fifteen houses down the street, arrived on his bike. Trevino had been outside smoking a cigarette when he saw a man and woman walk down the street and enter a driveway near his daughter's house. Less than five minutes later, he saw the two people leave the driveway "kind of fast" and walk in his direction. He observed that the man was wearing black clothes and a black jacket. While Trevino was talking to Betsy de la Garza, he saw the two people get into a white, Ford Taurus that was parked about seven houses away. The car's owner, who was in her house at the time, had turned the car on and left it running to warm up. As Trevino watched, the two people drove away in the car.

At the time of these events, de la Garza was taking her children and Canales's niece, who lived at Trevino's house, to school. While on her way to pick the niece up, de la Garza noticed a man and woman walking down the street near Canales's house. She told the trial court:

> [The woman] looked dirty. What made me notice, she had on big red houseslippers [sic]. Her hair was in a bun, scraggly, and she had acne or something on her face.

> The guy was wearing a black jacket and had shaggy hair and he had on a baseball cap. It was black, I believe.

Their appearance concerned de la Garza. After picking up the Canales's niece and taking her to a nearby store for some medicine, de la Garza decided to drive by Canales's house again. As she passed Canales's house, she saw the man standing approximately ten inches away from Canales's kitchen window and the woman standing at the front door moving her head back and forth and "looking . . . like she was looking out for him." De la Garza drove to Trevino's house and informed him that someone was trying to break into

3

Canales's home.  De la Garza testified that she then drove around the block again, and upon driving down the street, the white Taurus pulled out in front of her car.  She saw the woman, who was driving the vehicle, look back before pulling out, and she saw the man, whom she recognized by "his shaggy hair and jacket," sitting in the passenger seat.

After the break-in, Canales called 9-1-1.  Peace Officer Melissa Rendon Wasicek ("Officer Rendon") overheard the 9-1-1-dispatcher's conversation and determined that the call involved a burglary.  She also heard a car-theft call that came in a few minutes earlier. She understood that two individuals were involved in the burglary.  While en route to the location of the occurrences, the 9-1-1 dispatcher issued a description of the suspects. Officer Rendon drove by two people, appellant and Jessica Kathleen Orellana, walking near the general area of the reported crimes; they matched the suspects' descriptions.  She notified the dispatcher that she may have found the suspects.  Officer Cody Breunig heard Officer Rendon's update and reported to her location.  The two officers "made contact" with the two individuals; Officer Breunig approached appellant, and Officer Rendon approached Orellana.

Officer Breunig recorded his conversation with appellant, which the State played at trial.  Officer Breunig testified that it sounded like appellant told him, "I went in—I didn't go into the house."  The recording also recorded Officer Breunig's immediate response to that statement, in which he told appellant, "I know you didn't break into the house."  At trial, Officer Breunig explained that at the time appellant made that statement to him, Officer Breunig was only thinking about the car theft.  He described that as his "primary concern." In the recorded conversation, Officer Breunig told appellant, "I'm not worried about the house, I'm trying to figure out what happened with the car."

4

Appellant informed Officer Breunig that he had a crowbar, which Officer Breunig seized from appellant's black leather jacket. Upon searching appellant, the officers found a black hat with a red design on it. In addition, appellant possessed women's perfume, women's deodorant, nail polish, and a Bible, all of which had been taken from the stolen vehicle. The vehicle was found abandoned nearby.

At the scene of arrest, de la Garza told one of the officers that she recognized the two people as the ones who had been in Canales's driveway and the stolen car. Canales and K.C. also went to the scene. K.C. told Officer Breunig that she recognized appellant as the man who had knocked on her door. Trevino, also present, told the police officers that he recognized the man as the one who had entered his daughter's driveway and the woman as the one who drove away in the stolen car.

Officer Breunig took the crowbar to Canales's house and investigated the window. He noticed "that it [the window] had been pryed [sic] open by some kind of pry device. . . ." There were three pry marks around the window, and a horizontal crack at the window's base. It appeared as if "quite a bit of force was used on [the window] that split the wood . . . ." He held up the crowbar and, by an "eyeball" comparison, determined that the pry marks came from appellant's crowbar. He did not use measuring equipment to confirm the conclusion, and he did not dust for prints.

Officer Daniel Torres investigated Canales's house before Officer Breunig. According to Officer Torres, he found the window by the kitchen open and the blinds "disturbed." Officer Torres testified, "[t]he bent blind [sic] and the discoloration at the bottom . . . similates [sic] someone going in." The discoloration resulted from dust being knocked off a section of the blinds. Officer Torres speculated that the dust was knocked off

5

when a person attempted to crawl through the bottom "foot-and-a-half, maybe" of the window. On cross-examination, however, Officer Torres admitted that there was some discoloration, or dustless blinds, also at the top of the window.

During the trial, K.C., Trevino, and de la Garza each identified appellant as the man who was outside Canales's house immediately preceding the break-in. Canales noted that, because she never saw the intruder's face, she relied on her daughter's assertion that appellant was the person who knocked on the front door. Canales admitted that K.C. had astigmatism, which requires her to wear glasses. She believed K.C. was wearing them that morning.

Orellana also testified. She admitted that she stole the vehicle. She characterized it as her idea and said she forced it upon appellant. She further admitted that she and appellant approached Canales's house, but denied that appellant broke in. According to Orellana, they went into the carport because they thought they saw some beer. Upon discovering that there was none, they promptly left.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State,* 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis in original); *see Brooks v. State,* 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State,* 322 S.W.3d

6

401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State,* 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The offense of burglary of a habitation is committed when (1) a person; (2) without the effective consent of the owner; (3) enters a habitation; (4) with the intent to commit a felony, theft, or assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011).

In reviewing the sufficiency of the evidence, we should look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985) and *Thompson v. State*, 697 S.W.2d 413, 416 (Tex. Crim. App. 1985)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. *Id.* (citing *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987) and *Russell v. State*, 665 S.W.2d 771, 776 (Tex. Crim. App. 1983)). The evidence is

7

sufficient if the conclusion of guilt is warranted by the combined and cumulative force of all the incriminating circumstances.   *See id.*

## III.   DISCUSSION

Appellant argues that the evidence is insufficient to support his conviction. Specifically, appellant contends that the State failed to prove beyond a reasonable doubt entry, identity, and intent to commit theft.   We disagree.

### A.   The evidence is sufficient to show entry.

We hold that a jury could reasonably conclude beyond a reasonable doubt that there was an entry.   "Enter" means to intrude any part of the body or physical object connected with the body.   TEX. PENAL CODE ANN. § 30.02(b).   "Entry" is established when the plane of the opening of a house is broken, which may be accomplished by placing a foot inside a door frame, cutting window or door screens, or breaking a door lock or frame.   *See Ortega v. State*, 626 S.W.2d 746, 747 (Tex. Crim. App. 1981) (concluding there was "entry" when evidence showed screen door latch was pulled off, wooden door's knob was disabled, and pry marks were on wooden door); *Moore v. State*, 54 S.W.3d 529, 539–40 (Tex. App.—Fort Worth 2001, pet ref'd) (testimony that defendant placed foot in the door was sufficient to support "entry."); *Williams v. State*, 997 S.W.2d 415, 417 (Tex. App.—Beaumont 1999, no pet.) (evidence of broken padlock and door frame on garage established entry); *Woods v. State*, 814 S.W.2d 213, 215–16 (Tex. App.—Tyler 1991, no writ) (homeowner's testimony that four window screens and door screen had been cut, along with police officers' testimony that defendant was apprehended nearby with a knife in hand, was sufficient to prove "entry").   Thus, entry can be any breach of the "close" of the residence.   *Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.—Amarillo 2010, pet. ref'd).

8

The jury heard substantial testimony that indicated there was entry into the house. K.C. testified that she heard a window-opening sound and saw someone push the blinds and curtains inward into the house "[l]ike somebody was coming in"—"like the head coming in." Canales said that someone came through the window and crouched in the kitchen. Officer Torres confirmed that the blinds were bent and discolored, or dustless, as if someone had entered the house. Officer Breunig testified that the window appeared to have been forcibly opened with some kind of prying instrument; that he seized a crowbar from appellant; and that he matched the crowbar with the pry marks on the window. The jury was permitted to disregard any conflicting evidence, and it is not the function of this court to disturb the jury's weighing of the evidence. *See Anderson*, 322 S.W.3d at 405. Based on this evidence, we hold that the jury was rational in finding that there was entry. *See Martinez*, 304 S.W.3d at 660; *Williams v. State*, 997 S.W.2d 415, 418 (Tex. App.—Beaumont 1999, no pet.).

**B. The evidence is sufficient to identify appellant as the intruder.**

Appellant also challenges the sufficiency of the evidence to prove that he committed the crime. He argues that the evidence, at best, shows merely that he was near the scene of a crime. It is true that mere presence at the scene of an offense is insufficient to prove the commission of a charged offense. *See Burns v. State*, 676 S.W.2d 118, 120 (Tex. Crim. App. 1984). However, "the complete rule is that while presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant." *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987); *Williams*, 997 S.W.2d at 417–18.

9

We hold that the jury had sufficient evidence to conclude appellant was the person who entered the house. De la Garza's testimony placed appellant less than one foot away from the window that was pried open. Officer Breunig retrieved a crowbar from appellant's jacket, and he concluded, by comparing the crowbar and the marks on the window, that the crowbar caused the pry marks. K.C. saw appellant outside the front door soon before the break-in, and Trevino saw appellant rush away from his daughter's driveway and steal a nearby vehicle. Again, the jury was free to weigh the contrary evidence and disregard it. *See Anderson*, 322 S.W.3d at 405. Based on this evidence, a rational fact-finder could conclude that appellant was the person who entered the house. *See id.* (holding fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony).

**C. The evidence is sufficient to prove appellant intended to commit theft.**

Theft is committed when a person "unlawfully appropriates property with intent to deprive the owner of the property." TEX. PENAL CODE ANN. § 31.03(a) (West 2011). A person acts with intent "when it is his conscious objective or desire to engage in the conduct." *Id.* § 6.03(a). In a burglary case, the State must prove intent beyond a reasonable doubt; it cannot be left simply to speculation or surmise. *Hernandez v. State*, 190 S.W.3d 856, 866 (Tex. App.—Corpus Christi 2006, no pet.) (citing *LaPoint v. State*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1986); *Coleman v. State*, 832 S.W.2d 409, 413 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd)). Because intent is a fact question for the jury, it may be inferred from the surrounding circumstances. *Id.* (citing *LaPoint*, 750 S.W.2d at 182). Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

10

The facts in this case are similar to *Gear v. State.* 340 S.W.3d 743 (Tex. Crim. App. 2011). In *Gear*, the complainant testified that she was inside her home and heard a rattling noise from a side door that had been nailed shut. *Id.* at 744. Soon after, she heard loud bangs that prompted her to go into the bedroom to investigate. *Id.* She came "face to face with appellant as he was trying to enter her home through a broken window that was not broken before she heard the noises and before her encounter with appellant." *Id.* The defendant said something like, "I didn't do it" and ran. *Id.* At trial, the defendant testified that he did not attempt to break into the home; he thought it was abandoned and that he only went there to urinate. *Id.* at 745. He stated that he may have punched the house, but only because he was agitated at himself for just having quit his job, with no transportation and only about a dollar in his pocket. *Id.*

The Texas Court of Criminal Appeals, in reversing the court of appeals' judgment and thereby upholding the defendant's conviction, was swayed by the fact that the defendant was "interrupted as he was attempting to enter the complainant's home immediately after he had broken the complainant's window, at which time he ran." *Id.* at 747. The Court further considered "the additional evidence of appellant's joblessness, his lack of transportation and funds, his 'implausible' and inconsistent explanations for his conduct, and his flight upon being interrupted by the complainant" relevant to determining intent. *Id.* at 748.

Like the defendant in *Gear*, appellant broke into a house which he thought was unoccupied, but only ceased his criminal objective upon being interrupted by the presence of an unexpected occupant. Appellant's intent to commit theft is further indicated by his immediate flight, his participation in a car theft, and the items found on his person which were taken from the stolen car. *See Colella v. State*, 915 S.W.2d 834, 839 n.7 (Tex. Crim.

11

App. 1995) ("[F]light is a circumstance from which an inference of guilt may be drawn) (citing *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989)); *see also Sneed v. State*, No. 13-05-00163-CR, 2006 Tex. App. LEXIS 1501, at \*2 (Tex. App.—Corpus Christi Feb. 23, 2006, no pet.) (mem. op., not designated for publication) (citing *Colella*, 915 S.W.2d at 839 n.7; *Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex. Crim. App. 1992)) (holding flight is a circumstance of guilt). Viewing the evidence in the light most favorable to the prosecution, we find that a rational fact-finder could find that appellant intended to commit theft inside the house beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Gear*, 340 S.W.3d at 744; *Solis*, 589 S.W.2d at 446–47.

## IV. CONCLUSION

Having determined that the evidence is sufficient to prove that appellant entered Canales's house with the intent to commit theft, we overrule appellant's sole issue on appeal. We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Delivered and filed the
6th day of December, 2012.

12